## KNIGHT *v.* HEATH.

Where a writing is impeached, as forged or fraudulent, evidence tending to prove another writing upon the same subject matter, and upon the same paper, to be forged or fraudulent, is admissible, though the last writing is not offered in evidence.

ASSUMPSIT, on a promissory note. The defendant pleaded, that before, and at the time of signing said note, and always since, she was the wife of one Daniel S. Heath, who was still living. Upon this plea issue was joined.

Among other evidence to prove a marriage between the defendant and said Heath, the defendant introduced a writing in the following form :

To Jesse Gordon, a justice of the peace for the county of Rockingham :

Daniel S. Heath, and Hannah Webster, both of Salem, in said county, show that we have contracted, and do now agree, to enter into the marriage covenant with each other, and faithfully to perform all the duties to each other, resulting from the relation of husband and wife, so long as we shall both live. Our intention of marriage has been duly published, and we therefore request you to solemnize, and record our marriage.

| (Witness,) | (Signed,) |
|---|---|
| Hazen Noyes, | DANIEL S. HEATH, |
| Harrison Heath. | HANNAH WEBSTER. |

Evidence being introduced to prove the hand-writing of the witnesses and parties, it was objected, that, this writing was inadmissable, without proof of the certificate which was written at the foot of the foregoing writing, which was as follows :

ROCKINGHAM, ss. — On the ———— day of October, 1831, at Hampstead, in said county, personally came before me, Jesse Gordon, a justice of the peace for the county of Rockingham, Daniel S. Heath and Hannah Webster, both of Salem in said county, and in my presence subscribed the foregoing application, and declared the same to be their deliberate act. Whereupon the said Daniel S. Heath, and Hannah Webster, were lawfully joined in marriage in presence of the above witnesses, before me,

JESSE GORDON, *Justice of the Peace.*

But the court held the writing admissible, without proof of the signature of the justice to this certificate ; the certificate itself not being offered in evidence.

The plaintiff then introduced witnesses to prove, that this was a forged paper, and, as tending to show that the signatures of the witnesses to the application were forged, offered to show that the certificate and signature of the justice were not in his hand-writing. This evidence was objected to by the defendant's counsel, but the court admitted it.

The defendant now moves to set aside the verdict of the jury, and for a new trial, on the ground of supposed error in admitting the said evidence.

*French,* for the plaintiff.

*G. C. Bartlett,* and *Hobbs,* for the defendant.

BELL, J.   The document produced, consists of two parts, an application to a magistrate to be married, reciting the agreement of the parties to enter into that relation, and a certificate of the magistrate that the application was signed and acknowledged in his presence, and the parties married before him.

The first might be a genuine paper, and the other might be forged. They might, therefore, for certain purposes be used in evidence separately. Both appear, however, as parts of one proceeding, and any facts which are calculated to throw a suspicion upon one, must naturally cast discredit upon the other, unless a satisfactory explanation is given.

The fact to be proved upon the issue in the case, was the marriage of the defendant. This paper, or rather a part of the writing upon it, was offered as evidence tending to prove such a marriage. If a witness had been placed upon the stand to prove a similar fact, it would be fair and proper to cross examine him to test his truth, his freedom from prejudice, or strong partiality between the parties, his means of knowledge, the accuracy of his recollection, the time, place and manner, in which his knowledge was acquired, and in short as to every circumstance, which might affect his credit with the jury. And if in giving his account of the transaction, he states material facts or circumstances connected with the transaction untruly, the other party may prove, that the facts are not truly stated, with a view to destroy the credit of the witness.

This paper being offered in evidence, stands in the same position as the witness. It is liable to be scrutinized, as to every particular within it, and every connected circumstance about it, to see if it is entitled to the credit it claims. Any inconsisten-

cy in the writing, may destroy its credit, any circumstance connected with it, which can be shown to be false, may tend to induce the jury to disregard it. Thus if the paper should prove to have a water-mark date, long after the professed date of the writing, or a water-mark of the manufacturer, who began business long after the transactions in question purport to have occurred, or if the paper is of a kind more recently invented, as the machine-made paper, these facts, with most jurors, would destroy their confidence in the paper at once. So if the paper has on it the name of an attesting witness, which is forged, or of such a witness, who could not have actually attested the writing, because he was not then living, or was absent from the country, or the like. So if the paper constitutes a part of the entire transaction, part of which can be shown to be false, or even improbable, the whole would be to some extent discredited. In the present instance, it was attempted to be shown, and that without objection, that the names of the witnesses were forged. The attestation was no necessary part of the document, since its legal effect was in no way dependent upon the attestation, yet the proof of that fact would have impaired the credibility of the whole paper. And on the same ground the certificate purporting to be a certificate of marriage by a magistrate, was quite as nearly connected with the petition offered in evidence, as the attestation. To shew this to be forged, would be to destroy almost the entire credit, which would be otherwise given to the instrument. Men, every where, act to a greater or less extent upon the principle, *falsus in uno, falsus in omnibus ;* and to show such falsehood in the circumstances, and in the details of a statement is a perfectly legitimate way of attacking the credit of the whole story.

Where the object is to show the fraudulent character of a transaction or instrument, it is always competent to offer evidence of other transactions connected in point of time, or other circumstances which may throw light upon the principal case, even though that connection is more remote than that between the two writings upon this paper. Thus on a question respecting the fraudulent character of a deed obtained by an administrator

from one of the heirs, evidence of fraud in relation to the property of another heir of the same estate was admitted. *Lovell* v. *Briggs*, 2 N. H. Rep., 218. So to prove fraud in a conveyance, evidence that the debtor, about the same time, made other conveyances indicating fraudulent collusion, is admissible. *Whittier* v. *Varney*, 10 N. H. Rep., 291 ; *Burnham* v. *Carr*, 11 Wend., 83 ; *Blake* v. *White*, 13 N. H. Rep., 267 ; *Howe* v. *Reed*, 3 Fairf. Rep., 515 ; *Aldrich* v. *Warren*, 4 Shepl. Rep., 565 ; *Hawes* v. *Dingley*, 5 Shepl. Rep., 341 ; *Foster* v. *Hall*, 12 Pick. Rep., 89. So where there were circumstances creating suspicion that a note had been fraudulently altered, the alteration of other notes drawn and endorsed by the same parties, to take up one for which the note in question has been given, was held admissible, as going to strengthen the suspicion. *Rankin* v. *Clarkebill*, 2 Johns. Ca., 198 ; *Snell* v. *Moses*, 1 Johns. Rep., 99.

The principle of these cases would go to the extent, that proof of the fraudulent character of the justice's certificate in this case, would be admissible to affect the credit of the petition, even if they had been on separate papers, if a connection in time, or other circumstances were shown between them.

A similar principle is applied in criminal cases to show the character of the acts charged, where a fraudulent motive, or guilty knowledge constitutes a part of the offence. As in prosecutions for forgery, the fact that the party had in his possession other forged papers, or instruments for committing forgery, or had passed other forged papers about the time, or had given a false name, is evidence of knowledge of the false character of the instrument, as well as of the intent to defraud. Arch. Cr. Pl., 195 ; Roscoe's Cr. Ev., 89.

So where a defendant was indicted for a robbery, in advising the prosecutor to give money to appease a mob ; to show this advice to be in bad faith, and as one of the mob ; other like demands of money by the same mob, on the same day, at other places, in presence of the prisoner, were received. *Rex* v. *Winkworth*, 4 C. & P., 444.

*Judgment on the Verdict.*